MATTHEW CULLEN

*v.*

AGNES HIGGINS.

*Opinion filed June 23, 1905.*

NEGLIGENCE—*contributory negligence by plaintiff precludes recovery.* If the injury to the plaintiff would not have happened had she been in the exercise of ordinary care for her safety she is not entitled to recover, even though the defendant was negligent, there being no claim of willful or wanton injury.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. E. P. VAIL, Judge, presiding.

JAMES G. CONDON, (A. W. BROWNE, of counsel,) for appellant.

A. W. BRICKWOOD, and BENJAMIN F. RICHOLSON, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county in favor of the appellee for the sum of $5600. At the close of all the evidence the court declined to take the case from the jury upon the motion of the appellant, which action of the court is assigned as error.

The appellee had been in the employ of the appellant for about four months as a waitress in the dining room of the Gault House, a hotel situated in the city of Chicago. The dining room was located upon the second floor and the appellee roomed upon the third floor of the hotel. There was but one elevator in the building. It had a north and a south entrance, each of which was closed by a sliding door. The south entrance was reached from the street by the ladies' entrance and through a hallway. The north entrance was connected with the office and was the entrance principally used, near which the lever of the elevator was located. A person desiring to enter the elevator could reach the north entrance from said hallway by passing around the elevator through the office. On the night the appellee was injured she entered the hotel by the ladies' entrance at about eleven o'clock, intending to go to her room. She passed down the hallway to the south entrance of the elevator, which she found closed. The boy in charge of the elevator was standing or sitting near the lever, facing the north door, which

was open, and did not see appellee, who remained standing near the south entrance without attracting the boy's attention. After she had remained in that position for from three to five minutes a bell-boy entered the elevator from the north and opened the south door for her to enter the elevator. Appellee started to enter the elevator and the elevator started to ascend at about the same time, and appellee was caught by the elevator and carried upward to near the ceiling of the first floor, when she fell.

In giving an account of the accident the appellee, upon cross-examination, in substance testified as follows: "When I got there that night the south door of the elevator was closed. The one near the office was open. I stood and waited about five minutes for the door to be opened. The boy did not see me and I did not say anything to him. He was reading a book or paper. He was facing the office. He had his back to me. I don't know whether he saw me or not. James Berry, a bell-boy, came in the north door of the elevator. He had a pitcher in his hand. When he came in he held the pitcher in one hand and opened the elevator door for me to enter with the other. He did that just as soon as he entered the elevator. He opened the south door where I was standing. Immediately after Berry came in the elevator the elevator boy started the elevator. I could not say whether the north door was closed or not. I noticed the elevator boy swing the lever as soon as Berry stepped into the elevator. I knew when the boy threw the lever the elevator would go up. I had seen the elevator go up and down. I was not watching the swinging of the lever. I was watching the boy open the door for me. The elevator boy at that time was facing the office. The elevator boy did not turn his head around and look at me from the time I first approached the elevator up to the time the elevator was raised."

James Berry, the bell-boy, testified: "When I entered the elevator I said to the elevator boy, 'Why don't you open the door and let that woman in?' He looked at me. I set

my pitcher down and opened the door for her. I closed the other door. Just as she was getting in,—she was half-way in,—the boy threw the lever over. It only took me a few seconds to open the south door and close the north door. I was facing south. When I turned around the elevator boy was looking at me."

Mr. Corbett, the hotel clerk, stood about nine feet from the elevator, facing it, when Berry entered. He testified: "I saw Berry from the time he entered the elevator; also the elevator boy. The elevator boy looked north. The elevator boy closed the north door as Berry opened the south door. As the elevator boy closed the north door the car started upwards. After the car started I noticed appellee was caught."

The bell-boy had nothing to do with the operation of the elevator, and his act in opening the south door of the elevator was not the act of the appellant, and it clearly appears from the evidence the elevator was in perfect repair and in good working order. The ground upon which it is sought to hold the appellant liable is that the elevator boy was guilty of negligence in starting the elevator after he knew the appellee was present, that the south elevator door had been opened and she was attempting to enter the elevator. In order to hold the appellant liable for the negligence of the elevator boy in starting the elevator there must be some proof in the record fairly tending to show the elevator boy knew the south door of the elevator had been opened and that the appellee was attempting to enter the elevator at the time he started the elevator. We have examined this record with care and find no evidence directly tending to establish that the elevator boy knew that Berry had opened the south elevator door and that appellee was attempting to enter the elevator at the time he started the elevator. Appellee testified that the elevator boy stood with his back to her, and that from the time she approached the elevator door until it started he did not turn his head and look at her. The hotel clerk testified that the elevator boy was looking north all the time.

216–6

The only evidence from which an inference may be drawn that the elevator boy knew that Berry had opened the south door and that the appellee was attempting to enter the elevator is that of Berry, who testified when he entered the elevator he said to the elevator boy, "Why don't you open the door and let that woman in?" and he was facing south, and when he turned around the elevator boy was looking at him. We think the most that can be said as to the effect of the expression made by Berry to the elevator boy, "Why don't you open the door and let that woman in?" is, that it was notice to him that some woman wanted to enter the elevator, but that it was not notice to him that the south door of the elevator had been opened and that she was attempting to enter the elevator, and that the statement that he was facing south and when he turned around the elevator boy was looking at him, found in Berry's testimony, refers to a time subsequent to the starting of the elevator. Reasonable minds, however, might disagree as to what inference should be drawn from the testimony of Berry. It is therefore apparent whether the court erred in not taking the case from the jury on the ground of the failure of appellee to prove negligence on the part of appellant is a very close question upon this record.

In addition to proof of actionable negligence on the part of appellant it was necessary, in order to make a case, that the appellee prove that at the time of the accident she was in the exercise of due care for her own safety,—in other words, that her own negligence did not contribute to the injury. The appellee was familiar with the manner in which the elevator was operated and the manner of entering the same. When she arrived at the south door thereof she did not attract the attention of the elevator boy to her presence, but remained standing outside the door of the elevator. She knew that Berry was not operating the elevator but that it was under the control of the boy at the lever. Immediately after Berry came in the elevator the elevator boy threw the lever, the effect of which she knew would be to cause the ele-

vator to ascend. At that time the elevator boy was facing the office and did not turn and look at her, but the appellee attempted to get into the elevator after it had started to ascend. She did this without knowing the boy in control of the elevator knew of her presence. She relied upon the bell-boy, and not upon the boy in charge of the elevator, to open the door for her. Appellee did not notify the boy in charge of the car of her presence and that she desired to enter the elevator. She saw the south door was closed and remained outside that door from three to five minutes instead of stepping around to the north door, which was open, and after the elevator door was thrown open by the bell-boy she attempted to enter the elevator, although she knew at that time the elevator boy had thrown the lever of the elevator, the effect of which would cause the car to ascend. We think this evidence, given as it is by the appellee, shows that she was injured by her own negligence in attempting to enter the elevator after it had started to ascend, and that by reason of such negligence she cannot recover,—that is, she failed to prove upon the trial she was in the exercise of due care for her own safety at the time she was injured, and for a failure to make such proof the court should have peremptorily instructed the jury to return a verdict in favor of the appellant.

It is also assigned as error that the court erred in refusing to give to the jury the sixteenth instruction offered on behalf of the appellant and in giving to the jury the first instruction given on behalf of the appellee. The sixteenth instruction asked by the appellant was as follows:

"The law places upon all persons the duty of exercising reasonable care to avoid injury, and even though the jury should believe, from the evidence, that the defendant was negligent and the plaintiff was injured thereby, if the evidence also shows that the injury would have been avoided by the exercise of ordinary care by the plaintiff, and that the plaintiff did not exercise such care, you should find the defendant not guilty."

It is not denied but this instruction is an accurate statement of the law and applicable to the case, but it is insisted that the principles sought to be announced to the jury thereby are fully covered by other instructions which were given to the jury. We cannot agree with this view. The giving of an instruction in abstract form does not deprive a litigant of the right to have the jury fully instructed as to the law of the case, in view of the evidence introduced upon the trial. The contention of the appellee was the appellant was guilty of negligence, while the contention of the appellant was that the appellee was guilty of contributory negligence, and, even though the appellant was guilty of negligence, that the appellee, by reason of her contributory negligence, could not recover. The appellant had the right to have an instruction given to the jury which clearly presented to them that phase of his defense, and as no instruction given to the jury presented appellant's contention fully and clearly in that regard, it was error to refuse said instruction.

The first instruction given on behalf of appellee informed the jury that in estimating her damages, if they found in her favor, they might take into consideration whether or not she had been "marred physically." The jury, we think, would understand the word "marred," as used in the instruction, to mean the same as the word "disfigured," and that the instruction in the form in which it was framed should not have been given to the jury. It is said, however, there is no evidence that the appellee was "marred physically" or disfigured, and that the instruction could have done the appellant no harm. If that fact were conceded then the instruction should not have been given, as there was no evidence upon which to base it, and it was error to give it for that reason.

The judgments of the Appellate and superior courts will be reversed and the cause remanded to the superior court.

*Reversed and remanded.*