BENJAMIN F. THOMPSON *et al.*

*v.*

CHARLES F. HEMENWAY *et al.*

*Opinion filed October 24, 1905—Rehearing denied Dec. 7, 1905.*

1. PARTIES—*what not essential in order that party be bound by decree.* In order that a corporation made a party complainant in a chancery suit shall be bound by the decree it is not essential that the attorney appearing be specifically employed by the corporation to act, provided it knew the attorney had filed a bill in its name but still allowed the suit to proceed to final decree without objection.

2. JUDGMENTS AND DECREES—*when sale under decree is in execution of judgment.* Where a prior judgment creditor is made a party to a proceeding to foreclose a subsequent mortgage, and the decree finds the judgment to be a prior lien and orders a sale of the property in satisfaction of both the judgment lien and the mortgage, the sale is in execution of the judgment, and it cannot be said the purchaser takes only a right of redemption under the mortgage.

3. RES JUDICATA—*when a party is bound by decree.* A party complainant in a foreclosure proceeding to which a prior judgment creditor is made a party, is bound by the decree finding the judgment lien to be superior and ordering a sale of the property in satisfaction of both the judgment lien and the mortgage.

4. SAME—*questions properly involved and which might have been determined are res judicata.* Matters properly involved under the issues in a chancery proceeding and which might have been raised and determined in that suit are *res judicata* in a subsequent suit between the parties.

5. JUDICIAL SALES—*when purchaser's title will relate back to date of judgment.* As between the purchaser at a sale under a decree finding a judgment lien to be superior to the lien of a mortgage and ordering a sale of the property, and a junior mortgagee who was a party to the foreclosure proceeding, the title of the purchaser will relate back to the date of the judgment lien as found by the decree, in determining the question of paramount title.

HAND, J., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding.

This was a suit in ejectment brought by appellants, against appellees, in the circuit court of Rock Island county. The object of the suit was to determine whether the appel-

lants, who were the plaintiffs below, or appellees, who were the defendants below and in possession of the property, were the holders of the superior legal title to the property in question when the suit was commenced.

It is conceded that both parties claim under the title formerly held by the J. S. Keater Lumber Company. Appellants claim paramount title as purchasers at a sale under a decree of the circuit court of Rock Island county, rendered in a proceeding for the foreclosure of a mortgage which was made by the Keater Company under date of February 20, 1892, to a large number of its creditors for various amounts. It also appears that on March 31, 1888, appellants obtained a judgment in the United States Circuit Court for the Northern District of Illinois against the J. S. Keater Lumber Company for $15,568.99, and that a writ of error was sued out of the United States Supreme Court, where, in 1892, the judgment was affirmed by that court. The writ of error was made a *supersedeas.* It appears that the mortgage above described from the J. S. Keater Lumber Company to Charles H. Deere and others on the property in question was to secure the payment of several claims and notes aggregating $39,645.21, and on April 22, 1892, proceedings were begun by the Rock Island National Bank, the holder of one of the claims secured by the mortgage to Charles H. Deere, (hereinafter designated the Deere mortgage,) to foreclose the same, and appellants, with others, were made defendants to this foreclosure proceeding. This mortgage was recorded two days after the United States Supreme Court affirmed the Thompson and Root judgment. An amendment was filed to the bill, and on September 29, 1892, Thompson and Root filed their answer to the bill as amended, setting up their judgment and claiming a senior lien on the premises in question. It further appears that pending the writ of error from the Thompson and Root judgment, on December 11, 1891, the J. S. Keater Lumber Company gave to the Moline State Savings Bank a mort-

gage on the property in question to secure the payment of
a note of $6000, and which was prior to the Deere mortgage
that was foreclosed by the Rock Island National Bank and
others.

On January 31, 1893, Ira O. Wilkinson, who was the
attorney for the estate of one Wheelock, who was surety
to the Moline State Savings Bank on a $2500 note given
by the J. S. Keater Lumber Company to said bank, and who,
on account of being surety on this $2500 note, as well as
others, had been indemnified by the Deere mortgage, filed,
in the name of the Moline State Savings Bank, an appear-
ance, in which the bank is purported to be owner of one of
the notes secured by the Deere mortgage. On the same day
a second amended bill was filed, in which the Moline State
Savings Bank became one of the complainants, averring that
the Moline State Savings Bank was the owner of one of
the notes secured by the Deere mortgage, describing it as a
$2500 note, a copy of which note was attached and marked
"Exhibit M," and on the same day Thompson and Root filed
an amended answer denying the complainant's right to a
foreclosure of the mortgage in question unless subject to the
lien of their judgment. No cross-bill was filed or affimative
relief prayed. On December 21, 1893, proceedings for the
foreclosure of the $6000 mortgage to the Moline State Sav-
ings Bank were begun by said bank, and Thompson and Root,
with others, were made defendants, and on May 16, 1894,
Thompson and Root filed their answer to the bill to foreclose
the $6000 mortgage, averring that their judgment lien was
prior to this mortgage. But the proceeding seems to have
been suspended awaiting the outcome of the contest between
Thompson and Root and the complainants in the proceed-
ing to foreclose the Deere mortgage.

On November 17, 1896, a decree for foreclosure was en-
tered in the proceeding to foreclose the Deere mortgage. The
court, in this decree, found that the $2500 note from the
J. S. Keater Lumber Company to the Moline State Savings

Bank, described in the amended bill and being the only note described in the amended bill in which it was claimed by any one said bank had any interest, had been paid prior to the entering of the decree, and that the lien of the Thompson and Root judgment was the first or senior lien, and then directed the sale of the premises free from the lien and expressly transferred their judgment lien to the proceeds of the sale, and then proceeded to find the amount, in order of priority, of the claims of the respective parties, and to direct the payment of such claims in the order of the priority as adjudicated. The decree contains the following recitals or findings: "That the equities of said Thompson and Root are superior to those of the complainants and also to those of all other defendants in this case;" that the property is to be sold and the proceeds applied, first, to the costs of the sale, and the balance, if any, to be paid to the other parties as provided for in the decree; "that said sale be free of and from the lien of said judgment in favor of the said Thompson and Root as well as of and from the liens of the said complainants under their said mortgage described in said bill of complaint as amended, and from all right, title and interest in said lands of the defendants except the right to redeem, etc., and that the lien of said judgment in favor of Thompson and Root shall be transferred to and become and be a lien upon and against the proceeds of said sale; that each and any of the parties to the suit may become purchasers at such sale; that in case the said Benjamin F. Thompson and Homer Root shall become purchasers at such sale, then they shall be held to pay, in cash, to the said master, only so much as shall be necessary to pay the fees, disbursements, etc., of said master on such sale, and the officers of this court their costs in this suit, and also such portion of their bid for and as shall exceed the sum of said master's fees, disbursements, commissions and costs last mentioned, and the amount to be paid to the said Thompson and Root, as aforesaid, in which case the said Thompson and Root

218—4

shall give to said master, to be filed with his report of sale, their receipt for the rest and remainder and amount of their bid, which, under the terms of this decree, they are entitled to have paid upon the amount due and owing to them, as aforesaid, upon their said judgment." It further provides that if the premises be not redeemed within fifteen months the master shall execute and deliver to the holder of the certificate a good and sufficient conveyance, in fee, of the premises, and that upon the execution of such conveyance the grantees in such deed shall have possession of the premises conveyed in such deed, and that any of the parties to said cause who shall be in possession of said premises, or any part thereof, and any person who may have come into possession under them since the commencement of this suit, shall deliver possession of and surrender said premises to such grantee upon production of such deed of conveyance.

Nowhere in the pleadings, evidence, master's reports or decree is the note secured by the $6000 mortgage of the Moline State Savings Bank mentioned, except in the description of the premises in the Deere mortgage, where it is said it was subject to the $6000 mortgage.

From the decree an appeal was carried to the Appellate Court and affirmed, and thence to this court, and was by this court affirmed at the June term, 1898. (*Rock Island Nat. Bank* v. *Thompson,* 173 Ill. 593.) On December 17, 1898, and after the affirmance of said decree by this court, a sale was had under the decree of the Deere mortgage, and appellants bid in the property for less than the amount of their judgment. On December 26 a master's report of sale was filed and approved, and on April 7, 1900, a deed to the premises in question was executed to appellants. Appellees hold as purchasers at a sale under a decree of the same court foreclosing the prior mortgage made by the same party under date of December 11, 1891, upon which mortgage foreclosure proceedings were begun December 21, 1893, to which the appellants filed their answer, which was afterwards dis-

missed as to them against their objection, and a decree was entered on July 8, 1898. On September 18 the premises in question were sold under this last decree. On April 11, 1901, a deed to the premises in question was made to Porter Skinner, assignee of the Moline State Savings Bank, who was purchaser at the sale under the foreclosure proceeding.

The above are, in substance, the facts proven on the trial from which both appellants and appellees claim title. The cause was tried before the court without a jury, and various propositions of law were submitted both by appellants and appellees, and those submitted by appellees were held to be the law and those submitted by appellants refused. Judgment was accordingly entered for appellees and appellants excepted thereto, and this appeal is prosecuted to reverse that judgment.

At the request of appellees the court held, in substance, (1) that they were the holders of the legal title, in fee simple, of the premises in question; (2) that the lien of the judgment of the United States court was never perfected into a title and that no title passed to appellants by virtue thereof; (3) that the lien of the judgment of the circuit court of the United States could only have been enforced and the title thereunder obtained by the method prescribed by the statutes of the United States; (4) that the Moline State Savings Bank was not a complainant in the proceeding to foreclose the Deere mortgage; (5) that the Moline State Savings Bank mortgage was not affected by the proceedings in the foreclosure of the Deere mortgage; (6) that the lien of the savings bank mortgage was superior to the lien of the Deere mortgage and the savings bank was not a necessary or proper party to the bill to foreclose the Deere mortgage, and its interest under its mortgage was not affected by the proceedings in that case; (7) that the only effect of a decree in the foreclosure of the Deere mortgage was to bar the rights of redemption under the Deere mortgage; (8) that the sale under the decree in the Deere mortgage proceeding was not

a sale under the judgment of appellants; (9) that plaintiffs (appellants) are not entitled to possession of the premises.

Plaintiffs offered, and the court refused to hold, nine propositions as the law in the case. These propositions were, in substance, as follows:

*First*—That the Moline State Savings Bank was a party to the suit to foreclose the Deere mortgage and is bound by the decree rendered therein.

*Second*—That if it did not expressly authorize its counsel to enter its appearance and make it a complainant in that bill, still it had notice, for at least three years prior to the rendition of the decree, that it was a complainant and did not repudiate its appearance, but remained a party complainant until the entry of the final decree and is bound thereby.

*Third*—The final decree of the foreclosure proceedings of the Deere mortgage was in a suit in which the savings bank was a party complainant and appellants were parties defendant, and is binding and conclusive on all matters and questions that were actually determined in that suit as well as all other matters which might have been determined therein; that it was determined therein that appellants' judgment became and continued to be a lien upon said premises to the time of said final decree; that said lien was a first lien on said premises; that the equities of Thompson and Root were superior to those of appellees, and that in case of sale under the decree the purchaser should be entitled to a good and sufficient conveyance, in fee, of the premises, and also to possession of said premises as against all parties to said suit.

*Fourth*—That in the Deere foreclosure proceedings the complainants, of which the savings bank was one, having by their bill prayed for a sale of the real estate in question, and having prayed that upon a sale the money arising therefrom be brought into court to be distributed among the parties thereto according to law, and a final decree having been entered in which the validity of the prior lien of Thompson and Root was involved and determined and the amount due on

said judgment ordered paid out of the proceeds of the sale, it follows that one of the matters properly involved in that suit and which might have been raised and determined therein was as to the right or interest the savings bank had to the premises and the money arising from such sale by virtue of its $6000 mortgage which it then held, and that the decree is *res judicata* as to the rights of appellees and appellants, and appellees are estopped thereby.

*Fifth*—The effect of the sale under the final decree in the Deere foreclosure proceeding was to vest in the purchasers at such sale title to said premises freed from the lien of the savings bank mortgage, under which appellees claim.

*Sixth*—Appellants having purchased the premises in question pursuant to said final decree and having received a deed thereunder, they became the owners of the fee in the premises and entitled to possession.

*Seventh*—That the sale under said decree having been made to appellants and all the proceeds thereof having been applied in part payment of the judgment in favor of appellants in the United States court, which was the first lien, and appellants having received a deed for the premises, their title is not only supported by the mortgage foreclosed in that suit, but is also based upon and supported by the lien of said judgment, and such title relates back to March 31, 1888, the date of said judgment, and vests the title in fee in appellants, paramount and superior to that of appellees.

*Eighth*—Thompson and Root being the purchasers under a decree of sale prayed by the savings bank as complainant, the title which they acquired to the premises under such purchase was all the right, title and interest held by all parties to that suit.

*Ninth*—That the title of Thompson and Root is prior, paramount and superior to any right, title or interest of appellees.

James Wickham, James O'Neill, and Jackson, Hurst & Stafford, for appellants.

CHARLES M. OSBORN, GEORGE W. WOOD, and BURTON F. PEEK, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

The contention of appellants is, that the Moline State Savings Bank, which foreclosed the $6000 mortgage and purchased the property at the sale, and Porter Skinner, the assignee thereof and testate of appellees, who received the assignment of said certificate of purchase from said bank, were parties complainant in the suit of the Rock Island National Bank *et al.* against the J. S. Keater Lumber Company and appellants and other persons, and are bound by the provisions of the decree entered in that suit; that the effect of the sale under the decree in that suit was to vest in appellants, who were the purchasers at that sale, title to the premises both under the mortgage foreclosed and under the lien of appellants' judgment in the Federal court and also of the interests in the premises held by the various parties to the suit; that the decree in that suit is *res judicata* as to rights of the parties in the premises; that the decree of foreclosure of the Moline State Savings Bank's mortgage was entered on July 8, 1899, after appellants had become the purchasers at the sale under the decree in the suit of the Rock Island National Bank *et al.* against the Keater Lumber Company *et al.*, and that said decree, under which appellees claim title, was had and entered without appellants being made parties thereto, and that the only effect of such decree and sale was to vest in Porter Skinner, under the master's deed, an equitable assignment of the mortgage of the Moline State Savings Bank.

Appellees deny that the Moline State Savings Bank was a party to the decree in the foreclosure of the Deere blanket mortgage at the suit of the Rock Island National Bank and others, and say that, if it shall be held that said bank was a party to said proceeding, the decree therein was only binding upon said bank, and those claiming through or under it, as far as the matters in that case were actually litigated; that the rights of the Moline State Savings Bank under the mort-

gage through which appellees claim title were in no manner in question in that suit, and that the decree did not and could not make the lien of the Deere blanket mortgage superior to the lien of the prior mortgage held by the Moline State Savings Bank; that the judgment in favor of appellants in the United States Circuit Court was not and could not be enforced by a decree of the State courts, and that all the title that appellants got must depend upon and relate to the Deere blanket mortgage, which was a junior mortgage to that of the Moline State Savings Bank, and that under it appellants could only obtain the right of redemption from the mortgage through which appellees claim. It therefore becomes material to first inquire whether the Moline State Savings Bank was a party to the foreclosure proceedings under the Deere blanket mortgage.

While it is true that some of the bank officers say that they do not think Judge Wilkinson was actually employed by the bank to enter its appearance and prosecute and join it in the prosecution of the bill in that case, it does appear that Judge Wilkinson, at the time the second amended bill was filed, in January, 1893, signed the bill as solicitor for all the parties complainant, including the bank; that Mr. Charles F. Hemenway, its cashier, and Mr. Porter Skinner, who was president of the bank, were also parties complainant, and a copy of the note, marked "Exhibit M," which the bill alleged belonged to the bank and was secured by the Deere blanket mortgage, was in the handwriting of Mr. Hemenway, the cashier of the bank. Judge Wood, one of the attorneys of the Moline State Savings Bank, who foreclosed the mortgage through which appellees claim, testified that about the time he filed the bill to foreclose that mortgage, which was in December, 1893, he knew that the Moline State Savings Bank was a party to the foreclosure proceeding in the other case and discussed the matter with the officers of the bank, and the record shows that a decree was not entered in the former proceeding until November, 1896, so that the officers

of the bank, and its attorney, Judge Wood, had notice, more than three years before the termination of the suit, that it was a party, and so far as the record or evidence discloses it remained a party to it, and without any effort to dismiss or any protest, until the final decree and during the appeal of the case to this court. Not only did it remain a party to the suit with the Rock Island National Bank, under the Deere blanket mortgage, until the final determination thereof, but the record also shows that the proceeding for the foreclosure of its own mortgage was suspended and no decree taken until after the affirmance by this court of the decree under the Deere blanket mortgage. By the allegations in the bill of the Deere mortgage foreclosure proceeding the validity and lien of appellants' judgment in the Federal court were put directly in question, the complainants in their bill alleging that if appellants had any lien it was subordinate to the Deere mortgage, and that mortgage on its face purported to be subordinate to the mortgage of the savings bank, and it was a matter of material interest to the savings bank that appellants' judgment, which was prior in date to both, should be declared subservient to the lien of the Deere mortgage, as that would also make it subservient to the lien of the savings bank mortgage. The Deere mortgage case was earnestly contested at every stage, and the officers of the savings bank, as individuals, were materially interested in the proceeding and parties complainant to it, and it is incredible that they would be ignorant of the fact that the bank which they represented and which claimed to have an interest in the fund secured by the mortgage was a party thereto. It was not necessary that the savings bank should specifically or particularly employ Judge Wilkinson and authorize him to join it as complainant in the bill with the Rock Island National Bank in the foreclosure of the Deere mortgage in order to bind it as a party. It is sufficient that the suit was prosecuted in its name with its knowledge, and decree rendered therein after such knowledge without objection on its part. (2 Ency. of Pl. & Pr. 682;

24 Am. & Eng. Ency. of Law,—2d ed.—737; *Logan* v. *Trayser,* 77 Wis. 579; *Carpenter* v. *Carpenter,* 99 N. W. Rep. 395.) The witness Hemenway, upon whom appellees rely to show that Judge Wilkinson was not the counsel of the savings bank and was not authorized to join it as complainant in said foreclosure proceeding, did not remember that he himself was a party to said proceeding, or that the Moline State Savings Bank, of which he was an officer and which was granted material relief, was also a party. From the whole record we are of opinion that the Moline State Savings Bank was a party complainant to that suit and was actively concerned with it.

In the foreclosure suit it was expressly found by the court that appellants had recovered a judgment against the J. S. Keater Lumber Company in the United States Circuit Court for the Northern District of Illinois on March 31, 1888, for $15,568.99, and that the same became a lien upon all real estate, lands, tenements and hereditaments of said lumber company, including the lands described in the bill of complaint as amended, and that said judgment continued to be, and was at the time of said decree, a lien upon all lands of said lumber company and the lands described in said bill. In that finding lay the chief bone of controversy in that case. It was contended by the complainants in that case that the judgment in the Federal court entered in Cook county was not a lien upon lands in Rock Island county, that execution had not issued on the judgment in time to preserve the lien, and that the circuit court could not in that proceeding enforce the lien and make it superior to the lien of the blanket mortgage. The circuit court decided adversely to those contentions and the Appellate Court and this court sustained it. No cross-bill was necessary in that case to enforce the lien of appellants' judgment. It was proper to do so under their answer. It was so held by this court in that case.

Appellees say that the only benefit or title appellants obtained to the land in question by virtue of the proceedings in

the foreclosure of the Deere mortgage was the right of redemption under that mortgage; that the title of appellants cannot relate back to the date of their judgment because, first, the decree in that case does not purport to enforce the judgment, and second, the judgment has never been enforced by the levy of an execution and sale thereunder in the manner prescribed by the statute of the United States.

We cannot agree with the contention that the court did not, in that decree, purport to enforce the judgment. It finds that it became a lien on March 31, 1888, that it continued to be a lien and was a lien at the time of the entry of the decree, and while it is true that the decree says that the lien of the judgment should "be transferred to and become a lien upon and against the said proceeds of the sale," that language is only used in connection with the manner of the sale. It was made manifest to the court that it was important to sell the land, not subject to but for the judgment as well as the mortgage debt, and the order is that it be sold "free and clear of and from the lien of said judgment * * * as well as from the lien of said * * * mortgage." We think this order not different from that ordinarily made where a judgment creditor is made a party to the foreclosure proceeding. If it can be said to have had any effect upon the judgment of appellants in addition to its enforcement, it was to make the lien of it specific as to the property involved in that suit. No case has been cited,—and we should be averse to follow it if it were,—in which it is held that where a judgment creditor is brought in to a foreclosure proceeding and the order of sale is for the satisfaction of both the judgment and the mortgage, the sale is not in execution of the lien of the judgment. There was nothing before that court but the question of liens,—the lien or liens created by the mortgage and the lien of appellants' judgment. If a prior judgment creditor should be made a party to a foreclosure proceeding by a mortgagee who took his mortgage subsequent to the judgment lien, and the sale was decreed for the satisfaction of

both the mortgage and the judgment lien, it would seem puerile to urge that the only title the purchaser obtained was by virtue of the mortgage lien. The power of a court of chancery to adjust the rights of various lienholders if one of them is such as gives the court jurisdiction, and to dispose of the property affected by the lien to the benefit of the holders according to priority, has been so long recognized that it would seem to be now beyond question. When the court has jurisdiction it acts upon the substance and not upon the form, and preserves instead of destroying rights. If it had the power at all to sell the property under the judgment lien in favor of appellants, then it had the power and we must hold that it intended to preserve to appellants the benefit of that sale. The savings bank being a party complainant to that proceeding is bound by it as far as the chancellor or this court could bind it.

Whether the judgment of appellants in the United States Circuit Court could be enforced by a decree of a State court without a cross-bill, or whether it could have been enforced by a decree of a State court at all in any manner, or whether the only manner in which the lien could be enforced was by execution issued on the judgment and levy on the land, were matters properly involved in that suit, and might have been, if they were not, raised and determined in it, and as to them that decree is *res judicata.* (*Hamilton* v. *Quimby,* 46 Ill. 90; *Kelly* v. *Donlin,* 70 id. 378; *Gage* v. *Ewing,* 107 id. 11; *Scates* v. *King,* 110 id. 456.) What was done there was done at the request and prayer of the savings bank, and it, or those claiming under it, will not be heard to say that they are not bound by it.

There is much force in the argument of appellants that appellees are estopped to assert any lien of the savings bank mortgage as against this sale. The savings bank mortgage was dated December 8, 1891, was due in one year, with interest payable semi-annually in advance, and conditions of forfeiture on failure to pay interest. At the time the savings

bank asked to be made a party complainant in the foreclosure of the Deere mortgage (January 31, 1893,) the mortgage it held was wholly past due and unpaid, except the first semi-annual payment of interest, which was paid, presumably, at the time the mortgage was made, so that when the savings bank became a co-complainant with the Rock Island National Bank *et al.* in the foreclosure of the Deere mortgage, the mortgage of the savings bank could have been foreclosed and its rights adjusted in the same proceeding.

Appellants invoke the well recognized rule that the doctrine of *res judicata* embraces not only what had actually been determined in the former suit, but also extends to any other matter properly involved and which might have been raised and determined in it, and contend that as the savings bank was a party and suffered a decree ordering the sale of the property in fee without having its rights under its mortgage saved by the terms of the decree, it is now estopped to say that its lien was superior to the lien of the blanket mortgage. Appellees answer this by saying that it did not lie within the powers of the circuit court to decree the lien of the blanket mortgage a prior lien to the lien of the savings bank mortgage, which was prior in date and recording. Whether the rule of *res judicata* can be carried to the extent contended for by appellants seems to us not controlling in this case, and we do not decide it. We think it clear that the chancellor, in the prior foreclosure proceeding, did determine that appellants had a lien upon the land under their judgment; that that lien dated back to the date of the judgment in 1888, which was prior to both mortgages; that the sale was as much to satisfy that lien as it was to satisfy the lien of the second mortgage, and that the proceeds of the sale, which in this case happened to be the land itself, did not amount to as much as the judgment in favor of appellants, which was the first lien, and that therefore there was nothing realized under the sale upon the second or blanket mortgage. We also hold that for the preservation of the title of appellants and in

determining who is possessed of the superior or paramount title as between appellants and appellees, appellants' title will and should relate back to the date of their judgment. Rorer on Judicial Sales, sec. 366; 5 Cruise on Real Prop. 510; *Kruse* v. *Scripps,* 11 Ill. 98.

We regard the power of the circuit court to enforce the lien of the judgment in favor of appellants under the proceeding to foreclose the blanket mortgage as settled by the decree in that case, and its affirmance by this court on that record, on the principle of *res judicata.* The doctrine of relation is necessarily applicable to the preservation of the title claimed under such sale. Then, if we do not go to the extent of holding that the lien of the savings bank mortgage, under which appellees claim, was lost or made subservient to the lien of the second or blanket mortgage by the proceedings through which appellants purchased the land, it leaves appellees with their mortgage still subject and subservient to the lien of the judgment in favor of appellants as it was before any of the proceedings were begun, and the right of the savings bank under its said mortgage was to redeem from the sale made by virtue of the lien of appellants' judgment. Before any decree had been taken in the foreclosure of the savings bank mortgage appellants had become the purchasers of the land at the sale under the prior decree. Their right, then, to the land by virtue of that sale was fixed, and appellees could have exercised their statutory right of redemption through that sale, which included no part of the moneys or fund represented by the second or blanket mortgage. This they did not see fit to do, but proceeded to take a decree of sale without appellants being made parties to the proceeding or dismissing them therefrom after they had answered. We are of the opinion that that proceeding did not give them any right as against appellants, and certainly not a superior right or a superior title to that of appellants. We are also of opinion the circuit court was in error in making its holdings in favor of appellees and rendering judgment for them.

The judgment of the circuit court will be reversed and judgment entered in this court for appellants, as we think no different result should or could be had by remanding the cause.                               *Judgment reversed.*

Mr. JUSTICE HAND, dissenting.