## Matthew Cullen v. Agnes Higgins.
## Gen. No. 13,550.

1. RES JUDICATA—*of what judgment or decree is.*  A judgment or decree is conclusive between the parties not only as to questions determined, but as to questions presented by the record and which might therefore have been raised and determined.

2. PASSENGER AND CARRIER—*when relation exists.*  *Held*, that the plaintiff's *status* in this case was under the doctrine of *res judicata* established as that of a passenger; *held*, further, that regardless of the question of *res judicata*, the evidence showed a *status* of passenger and carrier.

3. FELLOW-SERVANTS—*when relation does not exist.*  *Held*, that a waitress employed in a hotel was not a fellow-servant of an elevator boy employed in the same hotel.

4. EVIDENCE—*propriety of exclusion of opinion of court.*  An opinion of the Supreme Court is not competent in an action instituted to recover for personal injuries.

Action in case for personal injuries.  Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1907.  Affirmed.  Opinion filed December 23, 1907.

SHOPE, ZANE, BUSBY & WEBER, for appellant.

A. W. BRICKWOOD and BENJ. F. RICHOLSON, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

There have been two trials of this case.  On the first trial the jury found for appellee and assessed her damages at the sum of $5,650, and judgment was rendered on the verdict.  The appellant appealed from that judgment to this court, and we affirmed the judgment at the October term, 1903, of the court, and appellant appealed from the judgment of affirmance to the Supreme Court, and that court reversed the judgment of this court and the trial court remanded the cause to the trial court.  Cullen v. Higgins, 216 Ill. 78.  The

cause was again tried in the Superior Court of Cook county, the pleadings being the same as on the first trial, and the jury found for the appellee and assessed her damages at the sum of $3,000, and judgment was rendered on the verdict, when appellant again appealed to this court. In Cullen v. Higgins, *supra*, the court uses the following language:

"It is therefore apparent whether the court erred in not taking the case from the jury on the ground of the failure of the appellee to prove negligence on the part of appellant is a very close question upon this record.

In addition to proof of actionable negligence on the part of appellant it was necessary, in order to make a case, that the appellee prove that at the time of the accident she was in the exercise of due care for her own safety—in other words, that her own negligence did not contribute to the injury. The appellee was familiar with the manner in which the elevator was operated and the manner of entering the same. When she arrived at the south door thereof she did not attract the attention of the elevator boy to her presence, but remained standing outside the door of the elevator. She knew that Barry was not operating the elevator, but that it was under the control of the boy at the lever. Immediately after Barry came in the elevator the elevator boy threw the lever, the effect of which she knew would be to cause the elevator to ascend. At that time the elevator boy was facing the office and did not turn to look at her, but the appellee attempted to get into the elevator after it had started to ascend. She did this without knowing the boy in control of the elevator knew of her presence. She relied upon the bell-boy and not upon the boy in charge of the elevator, to open the door for her. Appellee did not notify the boy in charge of the car of her presence and that she desired to enter the elevator. She saw the south door was closed and remained outside that door from three to five minutes instead of stepping around to the north

door, which was open, and after the elevator door was thrown open by the bell-boy she attempted to enter the elevator, although she knew at that time the elevator boy had thrown the lever of the elevator, the effect of which would cause the car to ascend. We think this evidence, given as it is by appellee, shows that she was injured by her own negligence in attempting to enter the elevator after it had started to ascend, and that by reason of such negligence she cannot recover— that is, she failed to prove upon the trial she was in the exercise of due care for her own safety at the time she was injured, and for a failure to make such proof the court should have peremptorily instructed the jury to return a verdict in favor of the appellant.''

The court also held that the trial court erred in refusing an instruction asked by the appellant in reference to the necessity of ordinary care on the part of the plaintiff, and also in giving an instruction asked by the appellee in respect to damages. The opinion of the Supreme Court is the law of the case, on the evidence in the record before us and before the Supreme Court on the former appeals, and unless the evidence on the last trial, which is in the record now before us, is materially different from that on the former trial, there cannot, in accordance with the opinion of the Supreme Court, be a recovery by appellee. Therefore, the chief question is whether there is such material difference. The differences claimed by appellee's counsel are:

(1) On the former trial it was testified that the elevator was 6 feet wide by 7 feet long, while on the last trial it appeared by actual measurement it was 3 feet 10 inches from south to north, and 5 feet 1 inch from east to west. It appears from the record in the former appeal, the abstract of which is before us, that appellee and James Barry testified ''the elevator platform is about four or five feet wide; it is about square, I should judge,'' and that Thomas L. Corbett, clerk in appellant's hotel, testified: ''The elevator was about five feet square, I should judge.''

We find no evidence in the abstract of the record in the former appeal that the elevator was 6 feet wide by 7 feet long. In the present case Margaret Walsh testified that she assisted in measuring the elevator, and that it was 46 inches in width by 61 inches in length, thus making a difference in the dimensions of the floor of the elevator, as testified to in the former and the present case, of 1 inch one way and 14 inches the other way.

(2) On the former trial appellee testified that when she arrived at the south door of the elevator, she waited three, four or five minutes before the door was opened, while on the last trial she testified that, as she arrived at the south door, she saw the bell-boy coming, and she stood at the south door while he was walking across the office floor, and entering the elevator, and that the time could only have been a few seconds. We find this claim of difference in the evidence sustained by the record. On the former trial appellee testified: ''I went to the door on the south end of the elevator; the door was closed. I must have been there three or four minutes, probably five minutes, because the boy did not see me.'' On the last trial appellee testified that when she reached the elevator door she saw the elevator boy reading, and, at the same time, saw Barry, the bell-boy, coming toward the elevator past the hotel office, carrying a pitcher of water, and that he came through the elevator and opened the south door for her. She further testified, ''From the time I first came up to the elevator to the time he opened the door and I started to step into the elevator car, the length of time was just enough so that he could walk from where I saw him first to the door and open it for me. That was about twelve feet.'' Q. ''In point of time, how long was it, would you say?'' A. ''It couldn't have been very long.'' Q. ''In minutes or seconds?'' A. ''It must have been seconds; it couldn't have been minutes.''

(3)   On the former trial appellee testified in chief, that when the bell-boy, Barry, opened the door for her, she attempted to enter the elevator, and had one foot on it when it started to go up, and she tried to cling to something.  On cross-examination she testified that Barry opened the south door where she was standing, and, immediately after Barry came into the elevator, the elevator boy started the elevator; also that she noticed the elevator boy swing the lever as soon as Barry stepped into the elevator.  She further testified, on cross-examination, on the former trial: "I knew when the boy threw the lever the elevator went up.  I had seen the elevator go up and down.  I was not watching the switching of the lever; I was watching the boy opening the door for me.  The elevator boy, at that time, was facing the office."  On the last trial appellee testified in chief, that when Barry came in he opened the south door of the elevator for her to enter, and says, "As soon as Barry opened the door I went to step in; I stepped in the elevator.  *  *  *  As soon as he opened the door I stepped in the elevator.  The next thing I saw was the bell-boy go over and get the lever away from the elevator boy.  As soon as I entered he started the elevator.  At the time he started I had one foot on the elevator, just stepping in.  I had my weight on the foot that I stepped on the elevator.  When the elevator started I tried to get all the way in and I couldn't, and then the elevator went up.  As soon as the elevator started I saw Barry try to get hold of the lever, right after I got in, as I noticed it before I fell."  On cross-examination on the last trial appellee was interrogated and answered as follows:  Q.  "Now the elevator started as soon as Barry stepped on it, didn't it?"  A.  "No, it could not have done that, because he came in the elevator and opened the door for me."  Q.  "Did it start as soon as Barry stepped on?"  A.  "No, sir, it couldn't."  She further testified on cross: "When the elevator went up I was half in the elevator, holding on to some-

thing, but I don't know what. I know of clinging to something until I fell.''

Appellant's counsel charges appellee with perjury, on the ground of the difference between her testimony on the former and the last trial. We think the charge unwarranted. In our opinion, delivered by Mr. Justice Windes, in the former appeal, we called attention to the fact that appellee, in her direct examination, testified that she knew that Barry had been operating the elevator two or three days before the accident, and that she had ridden with him when he was operating it; also, that when he opened the door for her, she went to step on the elevator, and when she had one foot on it, the elevator started to go up, and she tried to cling to it, and that her testimony on the direct agreed with that of Barry, and said: ''Evidently she must have been confused on the cross-examination, for it is impossible that the elevator boy swung the lever, and that the elevator started as soon as the elevator boy thought Barry was in the elevator, as she testified.'' It is probable that appellee was never called as a witness except in the present case, and it is well known to trial judges and practitioners, that witnesses, however honest in intention, frequently become embarrassed and confused, especially on cross-examination. The testimony of appellee, on direct, in the former trial, as to the circumstances of her attempt to board the elevator, and what then occurred, is substantially the same as her testimony on the last trial, and corresponds with the testimony of James Barry.

Appellant's counsel, at the close of the plaintiff's evidence, and also at the close of all the evidence, moved the court, as in the former trial, to take the case from the jury, and presented appropriate instructions for that purpose, and contend that the motion made at the close of all the evidence should have been allowed. We are of opinion that the court properly overruled the motion and submitted the case to the jury; that the questions whether the appellant was

guilty of negligence, and whether appellee exercised ordinary care, were, under the circumstances, questions to be passed on by the jury.

Appellant's counsel, claiming that appellee was guilty of contributory negligence, quote part of the opinion of the Supreme Court, on the appeal to that court, in which the court used this language: "Immediately after Barry came in the elevator, the elevator boy threw the lever, the effect of which she knew would be to cause the elevator to ascend. At that time the elevator boy was facing the office and did not turn to look at her; but the appellee attempted to get into the elevator after it had started to ascend. * * * She saw the south door was closed and remained outside that door from three to five minutes, instead of stepping around to the north door, which was open; and after the elevator door was thrown open by the bell-boy she attempted to enter the elevator, although she knew at that time the elevator boy had thrown the lever of the elevator, the effect of which would cause the elevator to ascend. We think this evidence, given as it is by the appellee, shows that she was injured by her own negligence, in attempting to enter the elevator after it had started to ascend, and that, by reason of such negligence, she cannot recover." These remarks were based on evidence in the former record, and have no application to the evidence in the record now before us. It seems from the evidence that there was no elevator boy or man who continuously operated the elevator; that the bell-boys were bell-boys and elevator boys alternately. Barry testified: "I ran the car about four weeks, I guess. For the rest of the three months I was both elevator and bell-boy, and ran the elevator about half the time, when there was no elevator boy. This particular bell-boy had been working there at the hotel about three days before the accident." The appellee testified, referring to the time of the accident, "Previous to that I was acquainted with the elevator operator. I was not ac-

quainted with the person who operated the car the night I was hurt. I did not know his name, as he was only there a few days, and I didn't get acquainted with him. He was there two or three days, and was a boy between twelve and fourteen years of age. James Barry ran the elevator before that a week or two.'' Barry was about twenty-five years and some months of age at the time of the accident, and appellee had ridden on the elevator while he was operating it. Under these circumstances, we do not think it unnatural that appellee attempted to enter the elevator when Barry opened the door for her, and that it was a question for the jury whether or not she exercised ordinary care in so doing. The elevator boy, having been operating the elevator only three or four days, was inexperienced in its operation, and evidently was not attending to his business. His place was in the northwest corner of the elevator, and he was sitting there, with his face toward the north, reading a novel, as Barry testified, although he had been ordered by Mr. Corbett, as the latter testified, not to read while on duty. His attention was probably absorbed by the novel he was reading. Barry testified: ''I walked in the car and the boy was reading a book, and I says to him, 'Why don't you open the door and let that woman in?' '' Q. ''What reply, if any, did he make?'' A. ''He just looked at me.'' Q. ''Then what did you do?'' A. ''I set the can down and opened the south door to let her in, with my right hand, and slid the other door shut.'' * * * ''After I set the pitcher down, I opened the south door, and then she commenced to get in, and I turned around and slammed the other door shut. I opened the south door quick. It made quite a noise, you could hear it in the car quite a distance. You could hear it about eight feet, I suppose. I shut the north door first; never had a chance to shut the south one; when I opened the south door, the elevator boy was standing there, with a book in his hand.'' Barry's testimony that he asked the

elevator boy why he did not open the door and let the woman in is not contradicted, and surely this was notice to the elevator boy that appellee was waiting at the south door to be let in. The elevator boy was not produced as a witness, nor was his absence explained.

One of the causes assigned by appellant's counsel, in the motion to take the case from the jury, is that there is a variance between the declaration, which avers that appellee was a passenger, and the evidence, which shows that she was a mere licensee. Counsel devote a great part of their argument to their contention that appellee was not a passenger, citing numerous cases. The pleadings are precisely the same as in the record of the former appeal to this court, and in every count of the declaration it is averred that the appellee was a passenger on the elevator. Therefore, the question whether she was or not a passenger might have been raised and argued by counsel on the former appeal.

But, although clearly presented by the record, it was neither raised nor argued. The law is well settled, that a judgment or decree is conclusive between the parties not only as to questions determined, but as to questions presented by the record, and which, therefore, might have been raised and determined. Thompson v. Hemenway, 218 Ill. 46, 59, and cases cited.

This rule is applicable to the practice in this and the Supreme Court. Behymer v. Odell, 45 Ill. App. 616. Dilworth v. Curts, 139 Ill. 500, was an appeal from a decree. The appellant made an objection which might have been made on the record in a former appeal, but was not. In respect to the objection, the court say: "As has been heretofore stated, this cause was before us, on appeal by Stephen S. Phelps, William Phelps and Myron Phelps, at the September term of this court, 1875. It then appeared, as it now appears upon the face of the bills in the Berthold case and in the Edwards case, that the complainants in those two bills relied upon judgments rendered in the

federal court. Indeed, the decrees which Stephen S., William and Myron Phelps then sought to reverse were predicated upon such judgments. The same error, if error it is, existed and appeared in the record when the causes were submitted in this court at our September term, 1875. The then appellant, William Phelps, now plaintiff in error, had an opportunity then to assign the error now complained of, and to rely upon it to reverse the decrees, but he failed to do so. He allowed the cases to be decided without then raising the question, and as he failed to rely upon the error when he had an opportunity to do so on the former appeal, he must be regarded as having waived his right to do so on a subsequent appeal or writ of error. The former decision is conclusive on all errors assigned, or that existed and might have been assigned. This principle is well settled by authority. Ogden v. Larrabee, 70 Ill. 513; Smyth v. Neff, 123 *id.* 315; Newberry v. Blatchford, 106 *id.* 597. *Ib.* 517. See, also, Champaign County v. Reed, 106 Ill. 389, and Page v. The People, 99 Ill. 418, 423-4.''

The law being as stated, the appellant cannot on this appeal be heard to contend that appellee was not a passenger on the elevator. What has been said applies equally to the contention of appellant's counsel, that appellee and the operator of the elevator were fellow-servants. That question was not raised or argued on the former appeal, although the record in respect to the question was the same as the present record. The question whether appellee was a fellow-servant of the operator of the elevator was submitted to the jury by an instruction, and they found in the negative. Holding, as we do, that appellant is not in a position to be heard, on this appeal, on the questions whether appellee was a passenger, or whether she and the elevator boy were fellow-servants, a discussion of those questions is unnecessary. Nevertheless, we will say that if appellant's position were otherwise, we would hold that she was a passenger

and not a fellow-servant of the elevator boy. In St. L. C. & St. P. Ry. Co. v. Waggoner, 90 Ill. App. 556, the plaintiff was in the defendant's employ as a night telegraph operator, and was given transportation over the defendant's road to and from his work. He was struck and injured by a mail pouch thrown onto the depot platform from a car .in the defendant's train, while waiting on the platform to take the train. Held: "The relation sustained by defendant in error to plaintiff in error entitled him to the same care and protection due to the other passengers."

In Western Union Tel. Co. v. Woods, 88 ib. 375, the plaintiff was a messenger boy in the employ of the defendant, and went into the defendant's building to collect a bill for the defendant, and was injured in the elevator. ' The court held that the plaintiff was rightfully on the elevator and entitled to the same care as other passengers. However, a judgment in favor of the plaintiff was reversed, on the ground that he did not exercise ordinary care.

See, also, The Steamboat New World v. King, 16 Howard, 469; Philadelphia & R. R'd Co. v. Derby, 14 ib., 468; Waterbury v. N. Y. C. & H. R'd. Co., 17 Fed. R. 671, 672.

The appellee was a waitress in appellant's hotel and the elevator boy was unknown to her. They were not engaged in the same line of employment, nor were they habitually associated so that they could each exercise over the other influence promotive of proper caution.

Counsel for appellant offered in evidence the opinion in Cullen v. Higgins, 216 Ill. 78, which the court excluded, and it is urged that this was error. The ruling was proper. A contrary ruling would have been error. It is not proper even to read law to the jury in a civil case. City of Chicago v. McGiven, 78 Ill. 347, 350. A fortiori it is error to put in evidence a legal opinion to be taken by the jury to the jury room.

Counsel for appellant also object that the court erred in refusing to give to the jury appellant's second instruction, and in giving appellee's fifth instruction, and in refusing appellant's sixth instruction, and in refusing to give, as requested, appellant's eighteenth instruction, and in modifying and giving the same as modified. We find no error in any of said rulings of the court. The eighteenth instruction relates to false swearing, and, as asked, was erroneous for singling out the appellee, and its modification and giving it as modified was proper. The refused instructions are awkwardly numbered consecutively, commencing with one.

Lastly, it is objected that the damages are excessive. On the former appeal, in which the damages were assessed at $5,650, on substantially the same evidence in respect to appellee's injuries as in the present record, we refused to hold that the damages were excessive, and cannot now hold that damages assessed at $3,000 are excessive.

The judgment will be affirmed.

*Affirmed.*