414

Marguerite E. Schoen, Appellee, v. Henry Wolfson, Appellant.

Gen. No. 8,514.

Opinion filed November 4, 1931.

416

HOOPES & PEFFERLE, for appellant.

KNOTTS & KNOTTS, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Marguerite Schoen, appellee, plaintiff in the court below, recovered a verdict and judgment in the sum of $4,500 against Henry Wolfson, appellant and defendant, as damages sustained in an automobile collision on November 28, 1929.

The declaration consists of but one count and charges, in substance, that while appellee was riding in an automobile then owned and being driven by her husband at a point about two miles southeast of the City of Carlinville, Illinois, on State highway route No. 4 with due care and caution and while she was also exercising due care, and caution for her own safety, appellant carelessly and negligently managed and drove his said automobile in such an improper and dangerous manner that it ran off the paved portion of the highway and that he then quickly and sharply turned the automobile to the left at great speed across said pavement against the automobile in which she was riding whereby she was thrown with great force and violence against the front and side parts thereof and was struck by divers broken and flying pieces of the same; that by means thereof her lower jaw was broken and shattered, her right arm was broken, a portion of her tongue was cut out and bitten off, her lower lip was twice deeply cut and partially paralyzed, her knees cut and bruised and her nervous system greatly shocked and injured.

The accident happened on Thanksgiving Day, November 28, 1929. Appellee and her husband, Adolph Schoen, together with their four children, three girls and one boy, were riding in Mr. Schoen's car on

State highway No. 4 toward the City of Girard. The accident occurred about two and a half miles southeast of Carlinville. At this point the State highway, known as Route No. 4, runs in a northwesterly and southeasterly direction, and consists of a concrete road 16 feet wide with dirt shoulders on either side 9 or 10 feet wide and the usual depressions or ditches running alongside either shoulder. The car in which appellee was riding was proceeding in a northwesterly direction on the right hand side of the road at a speed of between 25 and 30 miles an hour. The automobile driven by appellant was proceeding in a southeasterly direction on the right-hand side of the pavement. The evidence for appellee tends to show that as the two cars approached each other, and when they were about 75 or 100 feet apart, the one driven by appellant ran off the south side of the pavement onto the shoulder so that the two right wheels were on the shoulder for a distance of between 15 and 40 feet according to the judgment of the different witnesses, and appellant in attempting to bring his car back onto the highway turned it to the left and ran it directly across the highway into the car in which appellee was riding causing the collision and the injuries to appellee. In the car with appellant were his wife, three children and an adult young lady, none of whom testified at the trial except appellant himself. There was some snow on the pavement and it had been thawing making the same wet and somewhat slippery. Appellant testified that he first saw the car in which appellee was riding when it was about 1,000 feet from him and that he was driving about 25 miles an hour prior to and at the time of the accident; that his car never got off the pavement onto the shoulder at all and that before the time of the accident it had commenced to skid and it zigzagged back and forth across the road and had turned completely around three or four times. There are many contradictions in his testimony. At one time he testified that he had

been skidding for a distance of three or four city blocks and another time he testified that he didn't think he made any move forward at all but kept skidding in the same place. His testimony that his car was skidding on the pavement before the accident is refuted by every other witness in the case including two disinterested witnesses who were riding in a car following the one in which appellee was riding. In one part of his testimony he stated: "I tried to straighten it out and I was helpless. I couldn't on account of the slippery condition of the road. It went around perhaps two or three times and then shot across the road and if it wasn't for the approaching car there my car would have stopped on account of the soft dirt on the shoulder, or perhaps it would have gone into the ditch. This man Schoen came and got in my way." The testimony of all of the other witnesses in the case tended to show that there was no such skidding of appellant's car; that the right wheels did go off on the south shoulder of the road; that appellant in attempting to get the wheels back on the pavement jerked the front wheels so far to the left that either on account of the speed at which he was driving or the slippery condition of the pavement the car shot directly across the pavement into the car in which appellee was riding. There is not a scintilla of evidence tending to show that appellee's husband or herself were guilty of any contributory negligence whatever. The husband of appellee was driving his car on the proper side of the highway at a slow rate of speed and could not have anticipated that appellant's car would suddenly dart across the highway at right angles and run into his car.

The fourth instruction given on behalf of appellee is as follows:

"4. You are further instructed by the court that if you find the issues for the plaintiff in the case of Marguerite E. Schoen against Henry Wolfson, then

in assessing the damages of said plaintiff, if any, you may and should take into consideration the nature and extent of the physical injuries received by her in the automobile collision in question and the pain and suffering she has endured and will in the future endure by reason thereof, if any such injuries and pain and suffering are shown by the evidence; also the permanent injuries and scars she has sustained by reason of the automobile collision in question, if any such injuries and scars are shown by the evidence; and from these considerations, together with all the other evidence in the case, you should assess said plaintiff's damages, if any, at such sum as you may find from the evidence will fairly compensate her for the actual damages she has sustained, if any, as the direct result of the automobile collision in question.'' It is contended by counsel for appellant that it was improper for the jury to assess any damages on account of any scars which appellee may have received from the accident.

The virtue of an instruction depends upon the facts in the case to which it is applied. The evidence shows that appellee had two lacerations through the lower lip a little to the left of the center of the chin which extended through and into the mouth. They were about an inch and a quarter long. She had a compound fracture of the lower jaw to the left of the midline; there is a great amount of scar tissue where the cuts were on the jaw, both external and internal, and at the site of the fracture along the gum margin; it is a permanent condition and interferes with the use of the lower lip; the joint is extremely sensitive at the point of this scar as is also the tooth near the site of the fracture; in opening the mouth there is a slight drawing of the fractures and a slight drawing of the lower lip to the left of the center with reference to the corner of the mouth; the jaw bone has united at the site of the fracture and there is a considerable amount

of callous and scar tissue; the scar tissue is sensitive and painful; there is no remedy for that because of the scar tissue at or near the site of the fracture where there is an opening in the bone through which a nerve passes; the nerve that passes through the opening in the bone is called the mental nerve; its function is to operate the lower lip and chin; the fracture is approximately at that part of the jaw bone and as a result of the union of this fracture and the scar tissue that was formed from the lacerated tissues this nerve is encased in that scar tissue causing it to be extremely tender and painful; it cannot be improved by treatment and is permanent; this nerve supplied the lower lip and the chin; as a result of the scar, there is an involvement of the lower lip and its use; the scar interferes with the motion of the lip; there is a drawing at the site of the scar when she opens and shuts her mouth; the scar extends from the portion of the chin and lower lip directly to the jaw bone; the scar tissue runs from the jaw bone through; the scar tissue that goes through the jaw bone has attached the lip or part of the lip to the bone so that it has become immobile although she can smile and pucker up her lips; the nature of the involvement now is pressure from callous and scar tissue; she cannot masticate food and keep her lips closed well enough to prevent the drooling of saliva due to the drawing of the scar tissues.

Appellee herself testified, "My jaw and my scars are very sensitive; the jaw bone is not the same as it was before; it hurts now; at times there is a tingling feeling in there; I can only masticate my food on the right side of the mouth because my teeth are sensitive on the left side; at the time of mastication I have difficulty in retaining the saliva in my mouth and it runs down the corner of my mouth on the left side and I am unable to prevent that—there are times that it is going down my mouth that I do not know it until someone directs my attention; it seems as though my

face on that side is lower than on the other side and my chin where these scars are is tight."

We have mentioned sufficient of the facts to show that the scars referred to in the instruction were not mere physical disfigurements of the face but were actual physical conditions resulting from the fracture of the jaw and the lacerations of the lips which bore directly upon the use of the jaw and the lips impairing the functions thereof and also upon the pain and discomfort of appellee. The instruction does not suggest that any damages might be awarded for future humiliation or mental anguish on account of the disfigurements of the face by reason of the scars, and in view of the facts above noted, we do not believe the jury could have been misled in awarding any damages for disfigurements of the face. In fact, there is nothing in evidence which tends to show that there were any material disfigurements caused by the scars. Counsel for appellant rely on the case of *Cullen v. Higgins,* 216 Ill. 78. In that case the court said: "The first instruction given on behalf of appellee informed the jury that in estimating her damages, if they found in her favor, they might take into consideration whether or not she had been 'marred physically.' The jury, we think, would understand the word 'marred,' as used in the instruction, to mean the same as the word 'disfigured,' and that the instruction in the form in which it was framed should not have been given to the jury." The instruction in that case is not set out in the opinion and it is uncertain in what form it was framed or what the facts were as to the extent the plaintiff there was "marred physically." In the case of *Illinois Cent. R. Co. v. Cole,* 165 Ill. 334, two instructions given for the plaintiff were considered by the court. One of them defining the measure of damages contained this clause: "and you may also consider whether or not he has been permanently injured, and to what extent, and also to what extent, if any,

he has been injured or marred in his personal appearance, and to what extent, if any, he may have endured physical and mental suffering as a natural and inevitable result of such injury.'' In discussing the propriety of remarks made by counsel for the plaintiff in his argument the court held: ''These remarks of counsel are improper to the extent that they seek to have the jury infer that their verdict might include damages for future mental anguish which might be suffered by the plaintiff from a contemplation of what might occur. This is not the law nor is it a proper element of damage.'' The court then, after holding that the error in regard to said remarks was not well taken because no objection had been made thereto, further states: ''No discussion of the two instructions given for the appellee is necessary. They in substance state correct principles of law. We have no right to surmise that the jury disregarded these plain instructions of the court and based their verdict on the improper remarks of counsel in argument.''

The scientific term for a scar is ''cicatrix'' and is defined as a mark left by a sore or wound. It is hypertrophic when it is a hard, rigid tumor formed by hypertrophy of the tissue of a cicatrix, and is vicious when it causes a deformity or impairs the function of a part. (The American Illustrated Medical Dictionary. Dorland.) The evidence shows that the scars in this case come under the latter classification of vicious. There was no error in the instruction on account of the inclusion of the scars as an element of damages.

Instruction No. 11 given on behalf of appellant defines what negligence is under the law. Instruction No. 12 instructs the jury that the plaintiff cannot recover unless they believe from the evidence that she has proved by a preponderance of the evidence, first, that she was exercising ordinary care for her own safety at and just prior to the time of the injury in question; second, that the defendant was guilty of

negligence in the manner charged; and third, that such negligence was the proximate, direct cause of the injury to the plaintiff. Instruction No. 14 stated that if the jury believed from the evidence that the plaintiff by using her faculties with ordinary and reasonable care in looking out for danger and could have warned her husband Adolph Schoen in time to have avoided the injury on the occasion in question and that she negligently failed to do so and thereby contributed to the injury, then she cannot recover in this case. Instruction No. 19 told the jury that if they believed from the evidence that the collision in question was not the result of negligence on the part of the defendant but was the result of an unavoidable accident then they should find the defendant not guilty.

The court refused to give the following instruction: "The court further instructs the jury that if you believe from the evidence that the direct and immediate cause of the collision in question was the condition of the road in question at the time in question and that said collision was not caused by negligence on the part of the defendant in such case you should find the defendant not guilty." There was no error in refusing to give this instruction. The instructions which were given, especially No. 19, covered the same principle announced in the refused instruction. Another instruction which the court refused to give for the defendant directed the jury that if they believed from the evidence that the plaintiff was guilty of any negligence which contributed to the injury in question even though such negligence be slight as compared to the negligence of the defendant, if any, then the plaintiff could not recover. It is insisted by counsel for appellee that this instruction attempts to revive the old discarded doctrine of comparative negligence, and it is as strenuously insisted by counsel for appellant that the true meaning of the instruction is the antithesis of that doctrine. Without attempting

to discuss this question we hold that the instructions given by the court covered sufficiently the issue of contributory negligence. Another instruction refused by the court was to the effect that in considering the amount of damages the jury should not take into consideration any disfigurement resulting from the injury. If this instruction states a correct proposition of law in the form in which it is drawn, which is unnecessary to decide, it but negatives an element of damages for which no claim was made and it was not error to refuse it.

It is also assigned as error that the amount of the verdict is excessive. In addition to the compound fracture of the lower jaw and the injury resulting from the formation of the scar tissue in connection therewith, plaintiff's tongue was lacerated and laid open and a piece bitten off; she had a laceration about one and a half inches long on the left wrist; she had a comminuted fracture of the lower end of the ulna of the right forearm which was an irregular, jagged break with small particles of bone entirely broken off; her knees were injured; she suffered intense pain and the arm which was fractured at times gives her pain; she remained in the hospital two weeks and at a friend's home for two more weeks during which time she received constant nursing and after she returned to her own home was unable to work for eleven weeks. Under these facts and taking into consideration the permanent character of the injury to her jaw and mouth by the formation of the scar tissue we do not feel that we should disturb the judgment of the jury on the amount of damages.

We find no reversible error in the record and the judgment of the circuit court is affirmed.

*Affirmed.*